## THE STATE *versus* JAMES D. GRANT.

In an indictment for larceny wherein the property charged to have been stolen was alleged to have been, "the property of one Eusebius Emerson of Addison," and the proof was, that there were, in that town, two men of that name, father and son, and that the property belonged to the son, who had usually written his name with *junior* attached to it; *it was held*, that *junior* was no part of the name, and that the ownership, as alleged in the indictment, was sufficiently proved.

On the trial of an indictment, to exclude confessions of guilt of the accused on the ground of their not having been voluntarily made, there must appear to have been held out some fear of personal injury, or hope of personal benefit of a temporal nature, unless the collateral inducement be so strong as to make it reasonable to believe, that it might have produced an untrue statement as a confession.

Where one has received money for himself and for another, for whom he acted as agent, and to whom he had given credit for his share, it is well alleged in the indictment for larceny that the money was the property of the person receiving it.

EXCEPTIONS from the Eastern District Court, CHANDLER J. presiding.

The indictment against Grant was for larceny, wherein he was charged with having stolen a trunk and money, "the property of one Eusebius Emerson of Addison in the county of Washington." To prove the allegations in the indictment, a witness was called, who testified, that his name was Eusebius Emerson; that he resided in Addison; that he was the son of Eusebius Emerson, who also was residing in the same town; that he, the witness, used formerly to sign his name without the addition of junior, but that for some years, since he had resided in the same town with his father, and been in business for himself, he had written his name, "Eusebius Emerson, Jr.," in order to distinguish his name from his father's. The witness stated that the trunk and money was his property; that part of the money was received in the ordinary course of his business, and that the residue was received as the earnings of a vessel belonging to himself and his wife's mother in equal shares, and that he was the vessel's agent, and had given her credit on his books for her part of the earnings.

The counsel for Grant then contended, that the allegation

as to ownership of the property, was not sustained by the proof, inasmuch as a part of the property was shown to have been the property of Eusebius Emerson, Jr. and the residue to have belonged to him and his wife's mother. The presiding Judge overruled the objection, and instructed the jury, that junior was no part of a name, and that if the witness was believed, he had such property or interest in the articles stolen, or such possession thereof, as sustained the allegation of ownership.

To prove the taking of the property by Grant, the attorney for the State called one Jacobs, who testified to certain confessions of the accused. The witness stated, that he, knowing that J. D. Grant and an older brother, Calvin Grant, were charged with having stolen the property, and, as Calvin had a wife and family, feeling desirous to get Calvin clear, before the confessions were made, he had an interview with James and Calvin for that purpose ; that Calvin appeared cast down and was crying; that he told James, that he thought he, James, was more guilty than his brother; that it was a pity for both of them to go to jail ; that his brother had a wife, and that James had better confess and save Calvin; but that he held out no inducements, that James would fare any better for it; and that thereupon the confessions were made.

The counsel for the accused objected to the admission of this testimony of confessions thus made, as they were not free and voluntary, but were made under an appeal in behalf of his brother, and under the influence of the advice of the witness for the purpose of saving his brother. The Judge overruled the objection, and admitted the testimony.

The verdict was guilty, and the accused filed exceptions.

*Lowell* and *Dunn*, for Grant, argued in support of the positions taken at the trial.

On the first point, that there was a fatal variance between the allegations in the indictment and the proof, both as to the name of the owner of part of the property, and as to ownership of the residue, they cited, 3 Stark. Ev. 1576, 1578 ; 1 Peters, 139 ; 1 Salk. 7 ; *Boyden* v. *Hastings*, 17 Pick. 200.

And to the point, that the confessions should have been ex-

cluded, *Comm.* v. *Knapp*, 9 Pick. 496 and 10 Pick. 490; 2 Stark. Ev. 49; 2 Leach, 636; Greenl. Ev. 248, 254.

*Bridges*, Attorney General, for the State, said that junior was no part of the name of the owner of the goods, and was inserted merely to describe the person. The identity of person may be shown by evidence, as it was here. This word was no part of the description of the offence. Roscoe's Crim. Ev. 597.

As to the property, the money was received as Emerson's, and he was liable over to the other part owner for the amount. And that is sufficient. Roscoe's Crim. Ev. 583.

To exclude the confessions, there must have been a promise of favor, or a threat of injury, to the person making the confessions. Here was neither the one nor the other. Ros. Cr. Ev. 38, 39.

The opinion of the Court was prepared by

SHEPLEY J. — The trunk, which was stolen, is alleged in the indictment to be the property of Eusebius Emerson of Addison. The proof is, that there were in that town two persons of that name, father and son; and that the trunk was the property of the son, who had usually written his name with junior attached to it. Junior is no part of the name. It is only descriptive of the person.

In *Lepiot* v. *Browne*, 1 Salk. 7, and in *Sweeting* v. *Fowler*, 1 Stark. R. 106, it was held, that when there are two, father and son, of the same name, the presumption is, that the father is meant. But this presumption is removed by any proof, that the son was intended. In *Boyden* v. *Hastings*, 17 Pick. 200, the declaration set forth a judgment in favor of Samuel Boyden. The judgment produced was in favor of Samuel Boyden, Jr. The Court say, "as the pleadings now stand, we cannot presume, that Samuel Boyden, Jr. and Samuel Boyden are the same person." In *Rex* v. *Peace*, 3 B. & A. 579, the indictment alleged an assault and battery on Elizabeth Edwards. It appeared in evidence, that there were two of that name, mother and daughter; and that the assault was committed upon the

daughter.   The like objection was taken, as in this case, and overruled.   The Court say, "the question here is not, whether the party assaulted has been rightly described; but who the party is, who is described in the indictment as having been assaulted.   Here that has been sufficiently proved.   The objection therefore is not sustained."   Excepting the difference in the crimes, that language is applicable to this case.

It is next objected, that the testimony stating the confessions of the accused was illegally received.   There can be no doubt, that an inducement was held out to him to make a confession to "save his brother."   And there is reason to believe, that he made it under that influence.   It would seem to be excluded by the rule laid down by Eyre, C. B. in Warickshall's case, 1 Leach, 298, where he says, "a confession forced from the mind by the flattery of hope, or by the torture of fear, comes in so questionable a shape, when it is to be considered as the evidence of guilt, that no credit ought to be given to it; and therefore it is rejected."   This rule appears to have been limited by subsequent cases, so that there must appear to be some fear of personal injury, or hope of personal benefit of a temporal nature, to exclude the confession; unless the collateral inducement be so strong as to make it reasonable to believe, that it might have produced an untrue statement as a confession.   Roscoe's Cr. Ev. 30; Greenl. Ev. 266; 9 Pick. 503. In this case the inducement was but the advice of one not pretending to have or to speak by any authority.   There was no promise or other ground of confidence, that his brother would escape, if he confessed.   And under such circumstances the Court cannot conclude that the motive was sufficiently strong to influence him to make a false statement.

The proof of property was sufficient for the purposes of the indictment.

*Exceptions overruled.*