376 A.2d 635

**COMMONWEALTH of Pennsylvania**

v.

**Salvatore PERILLO, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 18, 1977.

Decided Aug. 17, 1977.

64

Nino V. Tinari, Stephen P. Patrizio, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., William J. Stevens, Jr., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, NIX and MANDERINO, JJ.

OPINION

EAGEN, Chief Justice.

Salvatore Perillo was convicted by a jury in Philadelphia of murder of the first degree. Post-verdict motions were denied and judgment of sentence of life imprisonment was imposed. This appeal followed.

Perillo advances seven assignments of error as grounds for the grant of a new trial.[1] Of the seven assignments of error, five involve alleged prosecutorial misconduct at various stages of the proceedings, one involves the trial court's instructions to the jury concerning proof beyond a reasonable doubt, and one involves the manner in which the Commonwealth proved Perillo's prior criminal record.

Initially, we must determine if the assignments of error now advanced are properly preserved for review since the Commonwealth maintains they are waived because Perillo failed to assert them in written post-verdict motions. See *Commonwealth v. Blair,* 460 Pa. 31, 331 A.2d 213 (1975).

Written post-verdict motions of the "boiler-plate" variety were filed on February 6, 1975 and contained the following:

"The defendant reserves the right to file Additional and Supplemental Reasons for New Trial and Arrest of Judgment when the Notes of Testimony taken at the trial have been transcribed and a copy thereof made available to counsel for defendant."

Thereafter, on June 2, 1975, at the time of argument on post-verdict motions, Perillo *filed* a brief setting forth specifically each and every assignment of error now advanced and legal argument in support thereof. The court en banc entertained and considered each and every one of these assignments of error. Under the circumstances, we believe the requirement, that post-verdict motions and all assign-

---

1. Perillo does not argue that the evidence is insufficient to support the verdict, but an independent review of the record reveals sufficient evidence to support the verdict of murder of the first degree.

ments of error be in writing, Pa.R.Crim.P. 1123, has been substantially complied with.[2]

Since it is clear from the record that the prosecuting attorney was guilty of misconduct which precluded a fair trial and the rendition of an objective decision by the jury, we will order a new trial on this basis without reaching the other assignments of error.

The relevant facts are as follows:

On July 28, 1973, at approximately 11:45 a. m., John Benkert was fatally wounded by a gunshot while seated in his car at a highway intersection in south Philadelphia. At trial, two eyewitnesses identified Perillo as the person who shot Benkert. Perillo was also connected to the killing through a fingerprint, and through ballistic tests which compared cartridge casings of bullets found at the scene of the crime with cartridge casings of bullets fired from a .25 caliber pistol owned by Perillo and seized by police pursuant to a search warrant. The defense disputed the validity of the Commonwealth's evidence concerning the fingerprint and the validity of the conclusions which were drawn from the ballistics tests. Additionally, the defense presented various witnesses in an attempt to establish Perillo was not at the scene of the crime at the time Benkert was shot. In this connection, the defense called Daniel Murtha who testified, in effect, that he saw a person with a gun fleeing the scene of the killing and that Perillo was not this person.

During cross-examination of Murtha, the following occurred:

"[By the Commonwealth:]

2. This is not to suggest that we approve the procedure followed instantly. Additional or supplemental assignments of error should be filed expeditiously and sufficiently prior to the date of argument to afford both sides the opportunity to make an adequate presentation of the issues before the post-verdict motions court. However, where as here, the court accepts additional assignments of error at the time of argument in the form of a written supplemental motion or a written brief and considers the merits of these assignments of error in disposing of the post-verdict motions, we will not rule that the issues have been waived.

"Q. Now, Mr. Murtha, yesterday you were telling us about your conversations with the defendant. Sir, in your conversations with this defendant did this defendant give you a description of an eyewitness who testified in this court just three weeks ago against him, sir?

"[Defense Counsel:] Objection, Your Honor.

"The Court: Objection overruled.

"A. No, sir.

"Q. And, *did he tell you in this conversation, sir, that it was his intention, through his private investigator, to bribe this particular witness had failed*—

"[Defense Counsel:] Objection.

"Q. —and he needed you to turn the tables on the witness?

"[Defense Counsel:] Objection, Your Honor.

"The Court: Objection sustained. The Jury will ignore it. As I told you before, and I am instructing you again, testimony comes from the mouths of witnesses not from the statements of counsel.

"[By the Commonwealth:]

"Q. Did he tell you, sir, that *he needed you to come in here and lie as a fancy trick to turn the tables and turn the thing around*—

"[Defense Counsel:] Objection.

"Q. —because *he couldn't succeed in what he was trying to do with this particular eyewitness* ?

"[Defense Counsel:] Objection. *I move for a mistrial, Your Honor.*

"May we see you at side-bar? There is a case exactly on point concerning this kind of cross-examination.

"The Court: All right.

"(Whereupon a discussion was held at side-bar as follows:)

"[Defense Counsel:] Judge, the kind of cross-examination wherein there is in the question itself inflammatory statements such as being made has already been ruled upon by the Supreme Court in this Commonwealth. They are sufficient, in and of themselves, to cause a reversal. I would ask the Court, at this time, to admonish the Assist-

ant District Attorney in that regard. He can certainly ask the questions all he wants, but not by certain inflammatory remarks. That is the testimony that he is giving and I—

"The Court: All right. Mr. Campolongo, you cannot render your opinion either to the Jury during closing or by the nature of the questions you ask as to what weight, if any, should be given to any witness' testimony. By the type of questions you are asking you are advising the Jury your opinion that you don't believe this witness and, therefore, he is lying. I am instructing you, at this time, to stop that kind of questioning. It is prohibited and not allowed.

"I am going to instruct the Jury to disregard it again. Now, please cross-examine in accordance with the rules.

"[The Commonwealth:] Yes, sir.

"(Whereupon the following took place in open court before the Jury:)

"[By the Commonwealth:]

"Q. Now, let me ask you about—

"The Court: Wait a minute. Just a moment, Mr. Campolongo.

"[The Commonwealth:] Yes, sir.

"The Court: Ladies and gentlemen of the Jury, again I want to remind you and instruct you that evidence comes· from the mouths of witnesses and not from statements made by counsel, and even if there are questions that indicate certain matters, that is to be ignored by you and certainly the questions of the District Attorney are to be ignored by you and disregarded.

"You may proceed, Mr. Campolongo.

"[By the Commonwealth:]

"Q. Now, did you have a conversation, sir, with Mr. Tinari, the attorney who represents the defendant prior to your coming to testify?

"A. No.

"Q. You had no conversation with him at all—

"A. I met him in his office—

"Q. —is that correct?

"A. I met him in his office one time and that was it, which was on—

"Q. You said good morning to him; is that correct?

"A. I told him my name and who I was and what I was here for. Other than that I had no other conversations.

"Q. You had no other conversations. You just told him your name when you went to his office; is that correct?

"A. Yes.

"Q. When was that?

"A. Tuesday.

"Q. Tuesday?

"A. Yes.

"Q. You made a special trip to go in to see him on Tuesday to tell him what your name was; is that correct, sir?

"A. Well, I told him who I was and what I was there for.

"Q. What you were there for?

"A. Yes.

"Q. You didn't talk to him about the case; is that correct?

"A. Right, No.

"Q. For example, he didn't tell you that he was present in court when an eyewitness testified. He didn't tell you anything about what this eyewitness looked like because he, Mr. Tinari, was sitting right there when the eyewitness testified.

"A. Sir—

"[Defense Counsel:] Objection. He knows there was a sequestration order.

"Q. The witness was sitting right there.

"The Court: Just a moment, gentlemen. You are going into an area of what he might or might not have said. Mr. Tinari, this is proper cross-examination.

"[Defense Counsel:] What Mr. Tinari said? That is the problem. It's hearsay.

"The Court: What he said to Mr. Tinari.

"[Defense Counsel:] I'm sorry, Your Honor.

"[By the Commonwealth:]

"Q.  Mr. Tinari, didn't he give you the description of a Mr. Stea, and didn't Mr. Tinari say to you, 'Look—'

"A.  I don't—

"Q.  '—I want you to describe this guy because he's going to be another eyewitness and we're going to do a neat trick. We're going to turn the tables around and you'll get money for it.'?

"[Defense Counsel:] Objection.

"Q.  Is that what he told you?

"A.  I told him what I seen and heard.

"The Court:  Just a moment.

"[Defense Counsel:] It's the same thing.

"The Court:  Mr. Campolongo, I think I have already instructed you as to what is allowable for cross-examination purposes of a witness, and I am instructing you again to follow the rules.

"I am advising the Jury, again, to disregard any statements by counsel.

"Now, let's go forward and let's do it appropriately." [Emphasis added.]

The Commonwealth concedes, as it must, that the above quoted questions were improper because they implied the witness had been bribed to perjure himself. See, e. g., *Commonwealth v. Lipscombe*, 455 Pa. 525, 317 A.2d 205 (1974); *Commonwealth v. Potter*, 445 Pa. 284, 285 A.2d 492 (1971). But the Commonwealth argues that: 1) the trial court's instructions were adequate to dispel any possible prejudice which resulted from the improper questions; and/or 2) the improper questions by the Commonwealth's attorney[3] were: a) in response to equally improper conduct by defense counsel, such as, statements of personal opinion as to the credibility of witnesses and conduct calculated to irritate and annoy the court and the prosecuting attorney;

---

3.  The Commonwealth also concedes the impropriety of a remark made in closing argument by the Commonwealth's attorney which expressed the opinion that the investigating and prosecuting authorities knew the "truth," but argues that remark does not warrant reversal for the same reasons set forth above.

and, b) in response to efforts made on behalf of Perillo to bribe certain witnesses and to pressure a witness.[4]

As to the Commonwealth's first argument, "[t]he effect of such remarks depends upon the atmosphere of the trial . . ., and the proper action to be taken is within the discretion of the trial court." [Citations omitted.] *Commonwealth v. Stoltzus*, 462 Pa. 43, 61, 337 A.2d 873, 882 (1975).

After reviewing the entire record of this trial, we are regrettably forced to conclude that, in the words of the trial judge, the atmosphere of this trial was that of a "circus." The record is replete with disregard of rulings by the court by counsel for the Commonwealth and for the defense. Indeed, in at least two instances, the trial court, after admonishing counsel for disregarding its rulings and for engaging in shouting matches, found it necessary to threaten to use its contempt powers and to refer the record to our disciplinary board. The trial court opined counsel entertained "personal feelings" of animosity toward one another, and that animosity is clearly indicated by the behavior of counsel in referring to one another, in effect, as liars.

Furthermore, the remarks quoted above were of a highly prejudicial nature in that they not only suggested the witness was lying, but also attributed to Perillo participation in bribery. We must, therefore, conclude that the trial court abused its discretion in not granting a mistrial. This case is

---

4. The Commonwealth had included in its brief an appendix containing two statements. One was given by Gary Paul Giordano, a defense witness at trial, who testified that he did not see a little boy at the scene of the crime. The boy referred to is Anthony Helmer, who appeared for the Commonwealth at trial and testified that he was present at the scene of the crime and that Perillo was the person who shot Benkert. This statement contains admissions which suggest Giordano's trial testimony was perjured as a result of inducements offered by an investigator working on behalf of Perillo. The other statement was given by Anthony Helmer's mother, Theresa Helmer, and suggests the same investigator told her that Anthony was the only witness to the killing and that Anthony would alone bear the responsibility of putting Perillo "behind bars." She opined the investigator was attempting to pressure Anthony into not testifying. Both statements were given to authorities subsequent to trial.

controlled by *Commonwealth v. Potter,* supra, 445 Pa. at 287, 285 A.2d at 494 (1971) and the "only appropriate relief" given the atmosphere and the "highly prejudicial" nature of the remarks was for the court to have declared a mistrial.

*Commonwealth v. Cannon,* 458 Pa. 374, 327 A.2d 45 (1974), cited by the Commonwealth, is distinguishable in numerous respects. In that case, we affirmed the judgment of sentence, where the prosecutor "exhibited his disappointment with the testimony of [a] witness by requesting, in the presence of the jury, that the witness be held for the crime of perjury," *Commonwealth v. Cannon,* supra, 458 Pa. at 376, 327 A.2d at 46, because we found the court's instructions adequate to dispel any possible prejudice to the accused. But there, unlike here, no connection between the accused and the alleged perjury was included in the remark, the remark may have aided the defense because it was made about a Commonwealth's witness, and there was no suggestion that the atmosphere at trial was one of a "circus."

As to the Commonwealth's second argument, it must also be rejected. We have ruled a comment that an accused's testimony was "unbelievable" did not constitute reversible error where it was "motivated by, and was commensurate with, . . . prior attacks upon the credibility of" two Commonwealth witnesses. *Commonwealth v. Stoltzus,* supra, 462 Pa. at 62, 337 A.2d at 882 (1975). But instantly, the remarks of the Commonwealth's attorney are far more inflammatory than the remark made in *Commonwealth v. Stoltzus,* supra. Furthermore, many of remarks made by defense counsel, which the Commonwealth has brought to our attention and which it asserts motivated the remarks of the Commonwealth's attorney, occurred subsequent to the above quoted remarks by the Commonwealth's attorney. Furthermore, the remarks made prior to the above quoted remarks, to which we are referred by the Commonwealth, are far less inflammatory than the quoted remarks, e. g., defense counsel suggested on two occasions that he was only seeking the truth while the Commonwealth was not. Final-

ly, the trial atmosphere in *Commonwealth v. Stoltzus, supra,* did not even approach the "circus" atmosphere involved instantly, and thus the possibility that prejudice resulted in this trial is far greater than in *Commonwealth v. Stoltzus, supra.*

The judgment of sentence is reversed and a new trial is granted.

ROBERTS, J., filed a concurring opinion.

NIX, J., dissents.

JONES, former C. J., and POMEROY, J., did not participate in the consideration or decision of this case.

ROBERTS, Justice, concurring.

I join the majority in holding that the trial court erred in denying appellant's motion for a mistrial. See *Commonwealth v. Potter,* 445 Pa. 284, 285 A.2d 492 (1971).

I am constrained to write to emphasize that improper conduct on the part of an attorney can never justify impropriety on the part of his or her adversary. Retaliatory conduct by counsel has no place in a courtroom. It is the trial court's duty to ensure that the trial takes place in a dignified atmosphere, conducive to the fair and effective administration of justice.

The American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to the Function of the Trial Judge § 6.3 (Approved Draft, 1972) [ABA Standards] provide:

> "The trial judge has the obligation to use his judicial power to prevent distractions from and disruptions of the trial."

Section 6.5 further provides:

> "The trial judge should require attorneys to respect their obligations as officers of the court to support the

74

authority of the court and enable the trial to proceed with dignity."

Where an attorney causes a significant disruption, the trial court should correct the abuse and discipline the attorney, where necessary. The ABA Standards propose that the following sanctions be employed when necessary to maintain proper courtroom decorum:

"(i) censure or reprimand;

(ii) citation or punishment for contempt;

(iii) removal from the courtroom;

(iv) suspension for a limited time of the right to practice in the court where the misconduct occurred, if such sanction is permitted by law;

(v) informing the appropriate disciplinary bodies in every jurisdiction where the attorney is admitted to practice of the nature of the attorney's misconduct and of any sanction imposed."

ABA Standards, § 6.5, supra.*

Thus, the trial court has sufficient power to respond to an attorney's improper conduct. There is no reason for an attorney to retaliate to his or her adversary's unprofessional conduct. Such retaliation is highly improper.

---

* This Court has established the Disciplinary Board to ensure that all attorneys in the Commonwealth maintain the highest standards of professional conduct.