385 A.2d 484

COMMONWEALTH of Pennsylvania

v.

Catherine SARGENT, Appellant.

COMMONWEALTH of Pennsylvania

v.

George E. LEE, Appellant.

Superior Court of Pennsylvania.

Argued Nov. 12, 1976.

Decided April 13, 1978.

William F. Manifesto, Pittsburgh, for appellant at No. 619.

Allen N. Brunwasser, Pittsburgh, for appellant at No. 632.

Robert L. Eberhardt, Assistant District Attorney, Pittsburgh, with him Robert E. Colville, District Attorney, Pittsburgh, for Commonwealth, appellee.

Before JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

568

SPAETH, Judge:

 This is an appeal from judgments of sentence by two of three co-defendants. Appellant Lee (now deceased)[1] was convicted of keeping a bawdy house, keeping a disorderly house, accepting bawd money, and conspiracy to commit prostitution and assignation. Appellant Sargent was convicted of conspiracy to commit prostitution and assignation. The jury also convicted Shelly Jean Schall of various offenses, but her appeal is not involved here.

 Appellants assign numerous errors. We shall discuss only one, however, because it requires that a new trial be granted.[2]

1. The fact that appellant Lee has died does not moot his appeal. *Commonwealth v. Walker,* 447 Pa. 146, 288 A.2d 741 (1972).

2. Judge PRICE, in dissent, finds that appellants have not preserved this assignment of error for appeal because they failed to ask for a mistrial. We believe the applicable case is *Commonwealth v. Maloney,* 469 Pa. 342, 365 A.2d 1237 (1976). There, after a prejudicial prosecutorial remark, the defense objected and received curative instructions. On appeal, the defendant argued for reversal of his conviction on the basis of the prejudicial remark. The Supreme Court refused to consider the argument because defense counsel had not objected to the adequacy of the instruction nor had he moved for a mistrial. Citing *Commonwealth v. Glenn,* 459 Pa. 545, 330 A.2d 535 (1974), the Court noted that "the accused's rights were adequately protected and the possibility of a right to a mistrial waived because it was not moved for *and because the objection was sustained and the remedy given was not objected to.*" 469 Pa. at 351, 365 A.2d at 1242 (emphasis supplied). The clear implication is that if one objects to the adequacy of a curative instruction, with no result, the claim will be preserved for appeal. That is: counsel may validly infer that since the judge has found his own instructions adequate, any request for a mistrial will be denied.

In this case counsel said:

I specifically except to the many improper arguments of the District Attorney; not only those which were corrected, but I do not believe that Your Honor sufficiently corrected them. Your Honor did not reprimand the District Attorney, as required by law. I do not believe the caution to the Jury is sufficient.

N.T. 447–48.

No clarification, however, was forthcoming. We note that this objection was not made immediately following the curative instruction, but this fact does not compel us to find waiver. The curative instruction in this case was lengthy, somewhat diffused, *see infra,* and its effect on the jury could well have been unclear to counsel until there was time to reflect on it. Under these circumstances, we will

■ Appellants argue that the prosecutor in his summation to the jury made impermissibly prejudicial remarks. As he opened his summation the prosecutor said:

Now, the Defense attorneys are in a unique position—unique in the sense that they are here to protect their clients and insure that they get a fair trial—which I think we will all agree has happened. Every opportunity for their points to be raised and to be heard and argued and to be listened to and digested by you have been given to them and they have exercised those options. *But Defense attorneys are paid to acquit their clients.* Mr. Brunwasser *is paid to frame the evidence and the issues* in the light most favorable to his client, Lee, and he is asking you to acquit him. And Mr. Manifesto has been paid by his client Catherine Sargent, so that she will be acquitted. And Mr. Kelly is being paid so that his client, Schall, will be acquitted. So understand, when they speak to you, they speak to you with that basic reasoning: They want their people found not guilty of the crimes charged.

So, when you ultimately go upstairs and you sit down and you listen to each other talk, and you say to yourself, *"Did I hear a fair summary, analysis of the evidence and the facts; or, did I hear a paid attorney tell me what I should have been told to make me find his client guilty or not guilty,"* in this particular case, obviously, they are being paid for acquittal. Take that for what it's worth. N.T. 414–15 (emphasis supplied).[3]

Shortly afterwards the prosecutor referred to one of the key facts linking appellant Sargent to the alleged conspiracy to commit prostitution and assignation: the fact that although the massage parlor operated on the third floor by appellant Sargent was apparently independent from the establishment operated on the second floor by appellant Lee, an extension telephone in Sargent's name had been installed on the

review the assignment of error. *Cf. Commonwealth v. Davenport,* 250 Pa.Super. 304, 378 A.2d 948 (1977) (counsel's objection effective when it was made as soon as the nature of the witness's testimony became evident).

**3.** Appellants' objection was noted later. *See* note 4 *infra.*

second floor. After the police undercover visit (as a result of which appellants were arrested), but before trial, the extension telephone was disconnected. The prosecutor said of this:

[W]hy were phones needed on the Second Floor if Catherine Sargent ran a legitimate parlor, whatever, on the Third Floor? Were Sargent and Lee strangers? Why was Lee sending girls to the Third Floor? Why was Sargent having phones installed on the Second Floor? And why, in January of this year, was the phone taken out from the Second Floor and put only on the Third Floor—according to the records? *Was that because counsel analyzed the situation and felt that perhaps in a conspiracy trial Sargent—*

[Objection] [4]

N.T. 422 (emphasis supplied).

The trial judge then told the jury:

Members of the Jury, during the recent days we have had a case that has been handled by vigorous and competent counsel on both sides and I am sure that from time to time you must have noted that it was necessary for the Court to intervene now and then to keep the trial within normal bounds of procedure. At this point, during the closing address, I have been asked by counsel for the defendants to examine certain statements made by the Commonwealth during its closing argument. I have asked counsel on both sides to exercise restraint at this point of the trial, with all the testimony and in the matter being so close to an end, that nothing prejudicial may happen to cause this time to have been spent perhaps in vain, if something of a grievous, prejudicial nature should happen at this point. I am going to accede partially to the request of counsel for the defendants at this point and say to you, with respect to certain of the statements of the District Attorney, the ones that I will mention—and per-

---

4. Counsel had agreed to withhold objections to the end of the summations. After this statement by the prosecutor, however, defense counsel announced they could wait no longer. At this point they also objected to the prosecutor's remarks about their being paid.

haps some that I may not refer to—that perhaps they have exceeded the limits we normally allow counsel in closing argument to the Jury.

The first has to do with the reference to the attorneys representing the defendants as being "paid for acquittal" or words to that effect. Whatever the exact words that were employed, I am not sure of at the moment. But, of course, I think all of us know without being told that persons accused of crimes in our courts are entitled to be represented by counsel. Sometimes lawyers who represent persons charged with crimes are paid by their clients, sometimes they are not. Whether or not they are paid is not material, it is nothing that should concern the Jury or the Court. The important thing, of course, is that every person is entitled to the benefit of counsel. Anything that was contained in the statement of the District Attorney that might lead you to think there was something improper, or unethical, in the role played by the defendants' attorneys in this case, whether they were compensated or not, should be erased from your mind. I think it is not only a matter of law but it is a matter of common sense to know that if a person is accused of crime and engages counsel, he wants that lawyer to do his, or her, very best in presenting his case and striving to have him acquitted of the offense with which he, or she, may be charged.

The second matter has to do with any possible inference you might take from the remark that was begun—or the statement that was begun by the District Attorney, would tend to infer or imply that counsel—we don't know who, we don't know when these particular lawyers were employed in this case—may have had something to do with the change of the telephone service at these premises. This remark exceeded the bounds of propriety for a closing statement, and the Court asks you to disregard that statement and not to draw any inference adverse to the defendants or to their attorneys therefrom.

Now, at a time like this, in a case where there has been a lot of time spent in presenting it, I suppose emotions are involved on the part of counsel as well; and they, just as witnesses, the Court and the Jurors, must restrain themselves and strive for the impartiality that is necessary for the conduct of a fair and just trial.

N.T. 427–29.

A prosecuting attorney enjoys an office of unusual responsibility, *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975). He is a quasi-judicial officer representing the Commonwealth, which seeks no victims, but only justice. *Commonwealth v. Revty*, 448 Pa. 512, 295 A.2d 300 (1972). The Supreme Court of the United States, in *Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1935), said:

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

295 U.S. at 88, 55 S.Ct. at 633.

With these principles in mind, our courts have required prosecutors to "make *fair* deductions and suggest to the jury *appropriate* inferences *from the evidence*." *Commonwealth v. Revty, supra*, 448 Pa. at 517, 295 A.2d at 302 (footnote omitted; emphasis in original).

In *Commonwealth v. Williams*, 309 Pa. 529, 164 A. 532 (1932), the Supreme Court reversed partly on the basis of the prosecutor's statement that the defendant's attorney

has drawn on his experience. He has drawn on it in his characteristically inaccurate way and he has stated in an inaccurate way characteristic of him, certain facts in regard to other cases which are not part of your consideration in this case.

309 Pa. at 532, 164 A. at 533.

The Court found this language was "chiefly an arraignment of defendant's counsel", 309 Pa. at 534–35, 164 A. at 534, and held it improper. Similarly, scurrilous remarks directed at counsel's integrity were held to require reversal in *Mittelman v. Bartikowsky*, 283 Pa. 485, 129 A. 566 (1925).[5]

Although the task of determining whether impermissible prejudice has occurred is, in the first instance, the trial judge's, *Commonwealth v. Simon*, 432 Pa. 386, 248 A.2d 289 (1968), *Commonwealth v. Feiling*, 214 Pa.Super. 207, 252 A.2d 200 (1969), we cannot help but find first, that the prosecutor's remarks were prejudicial to appellants, and second, that the Court's statement to the jury regarding the remarks was insufficient to cure the prejudice.

In the first place, the court's statement was generalized and abstract to the point of inaccuracy. It was perfectly appropriate for the court to disclaim repeating "the exact words" used by the prosecutor; however, the court's paraphrase of the prosecutor's words missed the point of counsel's objection. From what the court said one would suppose that counsel were objecting only to the prosecutor saying that they were paid. That was not the case at all. The objection was that the prosecutor said that counsel were "paid to *acquit* their clients," "to *frame the evidence* and the issues." The prosecutor's plain implication was that appellants had paid counsel to achieve a dishonest result; this implication was then made unmistakably explicit in the prosecutor's rhetorical suggestion that counsel had advised their clients to have the second floor telephone taken out.

In the second place, the court's statement was permissive to an inappropriate extent. It was by no means sufficient to say of the prosecutor's remarks that "perhaps they have exceeded the limits we normally allow counsel." The remarks had grossly exceeded the limits, and it was imperative that the court first state or paraphrase the remarks accurately, and next explain in detail and with vigor why they were improper.

5. Ridicule of opposing counsel, while not necessary to reversal, was also rebuked in *Labalzo v. Varoli*, 409 Pa. 15, 185 A.2d 557 (1962).

By attacking appellants' counsel, the prosecutor undercut the fairness of the trial in a particularly severe way. Our system of justice is based on the assumption that facts cannot be evaluated in isolation but need some light shed on them, and that this is best achieved when counsel are driven by the adversary process to examine the facts from every aspect. For the prosecutor to imply that this process is dishonest was to misrepresent the very nature of the trial in which he was participating.

By disparaging the evidence and the inferences presented by appellants' counsel, the prosecutor interfered with the ability of the jury to "fairly weigh in [appellants'] behalf such circumstances of doubt . . . that may be present in the case." *Commonwealth v. Hoffman*, 439 Pa. 348, 355, 266 A.2d 726, 730 (1970).

It was particularly egregious for the prosecutor to suggest that counsel had advised their clients to have the second floor telephone taken out. Thereby the prosecutor indulged in inferences not justified by the record, which is prohibited by *Commonwealth v. Collins*, 462 Pa. 495, 341 A.2d 492 (1975), and *Commonwealth v. Bolden*, 227 Pa.Super. 458, 323 A.2d 797 (1974). From what he said it might well have seemed to the jurors that appellants' counsel had engaged in obstruction of justice. *See Commonwealth v. Perillo*, 474 Pa. 63, 376 A.2d 635 (1977) (reversible prejudice to imply that witness had been bribed to perjure himself).[6]

The Commonwealth claims that the prosecutor's comment on paid lawyers was provoked by counsel for appellant Lee's remark, "God bless the man that sues my client for that is how we earn a living." The latter statement was made to show the jury that counsel had no personal dislike of prosecution witnesses whom they cross-examined rigorously, and did not warrant such a response by the prosecution. *See Commonwealth v. Perillo, supra.* In any event, the remark

6. *And see* the Code of Professional Responsibility, EC 7–37, which reads in part:
 A lawyer should not make unfair or derogatory personal reference to opposing counsel.

could not warrant the prosecutor's suggestion about the telephone.

As the lower court noted, the trial was a hard-fought one, with numerous outbursts on all sides, and frequent exchanges of sharp words. Nevertheless, such conflicts, assuming they are sometimes unavoidable, should not be permitted to taint the deliberations of the jury, as they may well have done here.

Judgments of sentence vacated and new trial granted.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.

PRICE, J., files a dissenting opinion in which VAN der VOORT, J., joins.

PRICE, Judge, dissenting.

I dissent from the majority's decision to vacate judgment and grant a new trial on the basis of improprieties in the district attorney's closing remarks.

In spite of an agreement by the court and both the prosecution and defense counsel that the closing arguments be transcribed in their entirety and that objections be reserved until the addresses were concluded, Mr. Lee's counsel interrupted the district attorney's closing at least fifteen times, joined by co-defendants' counsel. The trial judge repeatedly acquiesced in counsels' requests for cautionary instructions and directions to the district attorney to be more careful in his statements. On at least five occasions counsel voiced suspicion that the prosecuting attorney was attempting to encourage the defense to request a mistrial. However, at no time did defense counsel make such a request. Appellant Lee's counsel specifically stated:

"It is my opinion that *Mr. Geary is trying to force us to ask for a mistrial in this case* . . . . The defendants have invested much time and money in the defense of this case. *We would like it to go to the Jury to have it adjudicated one way or the other.*" (NT 470a-71a) (emphasis added).

If the prosecutor had engaged in intentional or grossly negligent misconduct and a mistrial would have been granted on appellants' motion, double jeopardy would bar reprosecution. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977). Still, although appellants maintain on appeal that the prosecutor engaged in intentional misconduct to necessitate a mistrial, they failed to request one. Instead, the defense took a chance on acquittal. " 'A party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the court would have corrected.' " *Commonwealth v. Marlin*, 452 Pa. 380, 382, 305 A.2d 14, 16 (1973), *quoting Commonwealth v. Gockley*, 411 Pa. 437, 455, 192 A.2d 693, 702 (1963).

In *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976), our supreme court held that where an objection to improprieties in the prosecution's summation was sustained, counsel's failure to request a mistrial or curative instructions rendered those alleged errors waived on appeal. The court found that "Brown ha[d] been granted all that he had requested." *Id.*, 467 Pa. at 518, 359 A.2d at 396 (citations omitted). *See also Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974). In my view, this case is directly controlled by *Brown*.

Once an objection is sustained by the trial court, it is the responsibility of the objecting party to request specific relief by way of cautionary instructions or a mistrial (See Pa.R. Crim.P. 1118(b)), if he so desires. If cautionary instructions are deemed unsatisfactory, the aggrieved party must again object and suggest correction or elaboration. *Commonwealth v. Martinez*, 475 Pa. 331, 380 A.2d 747 (1977). If one believes cautionary instructions would reinforce objectionable matter in the jurors' minds, he may elect against them. Similarly, there are cases, such as the present one, in which one may not wish to terminate a case before it goes to the jury. Such is the option of the objector. Necessarily, once that choice is made in the lower court, a contrary position may not be asserted on appeal. Thus, it is my opinion that appellants have waived the issue of the alleged improprieties, and that they are now without a remedy.

I have reviewed the other issues raised by appellants and find them to be without merit. I would therefore affirm the judgments of sentence.

VAN der VOORT, J., joins in this dissenting opinion.