465 A.2d 1245

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Hugh L. FANT, Appellant.**

Supreme Court of Pennsylvania.

Submitted March 11, 1983.

Decided Oct. 4, 1983.

Reargument Denied Jan. 16, 1984.

Steve P. Leskinen, Uniontown (court-appointed), for appellant.

Gerald Solomon, Dist. Atty., Samuel J. Davis, Uniontown, for appellee.

Before ROBERTS, C.J., and NIX, LARSEN, FLAHERTY, McDERMOTT, HUTCHINSON and ZAPPALA, JJ.

## ORDER

PER CURIAM.

Judgments of Sentence Affirmed.

FLAHERTY, J., files a dissenting opinion in which ROBERTS, C.J., and ZAPPALA, J., join.

FLAHERTY, Justice, dissenting.

I dissent. The appellant, Hugh L. Fant, brings this direct appeal from judgments of sentence imposed after convictions by a jury of murder of the third degree and voluntary manslaughter. The charges arose out of the slayings of two persons at a lounge near Uniontown, Pennsylvania.[1]

Appellant challenges trial counsels' effectiveness for failure to object to portions of the prosecutor's closing remarks. It is clear that a prosecutor must have latitude in arguing that the facts presented at trial and reasonable inferences therefrom establish the guilt of the accused. Notwithstanding the human tendency toward zeal and emotion, however, it is the prosecutor's duty to temper his remarks to enable the jury to dispassionately and objectively evaluate the evidence and render a verdict based on the evidence, not one inspired by vengeance. Those remarks are improper whose unavoidable effect is to prejudice the jury, forming in the

---

1. This was appellant's second trial. This Court reversed his first conviction and granted a new trial at *Commonwealth v. Fant,* 480 Pa. 586, 391 A.2d 1040 (1978); *cert. denied* 441 U.S. 951, 99 S.Ct. 2180, 60 L.Ed.2d 1056 (1979).

jurors' minds fixed bias and hostility toward the accused, and rendering the jury unable to render a true verdict based on the evidence. *Commonwealth v. Joyner,* 469 Pa. 333, 365 A.2d 1233 (1976).

The remarks complained of appear in context as follows: That was about 1:30 a.m. The crowd was dispersed. Bruce Fisher apparently felt he had done his job, dispersed the crowd. Nobody got hurt. Nobody got beat up. There was a slap and nothing more. You know, when you think about that slap, [defense counsel] wants to know— he wanted to know from Martin Urban, did you ask [appellant] if you could slap him? Did you know he had a right not to be slapped? You know he had a first amendment right to use these words, mother this. He had all these rights. *What about Bruce Fisher's rights? He had a right to life. What about John Shlosky's rights? What about his constitutional rights? [Defense counsel] wants to know when they read him the rights—you didn't know he was seventeen years old. You read him these rights, you didn't know if he understands. Nobody read Bruce Fisher his rights. Nobody told him he had a right to an attorney. Nobody told him he had a right to a phone call, the one he tried to make that night. Nobody read him his rights. Nobody read John Shlosky his rights. We didn't get into that. Didn't they have any rights? I submit they did. They at least had the right to life. Forget about the constitutional rights. He had a right to life....*

. . . .

. . . [W]hen you put this testimony together, it comes out in one sequence of events—that Fant walked into the doorway, looked at Fisher—after Bruce Fisher who had struggled to get to the phone—they refused him his phone call—struggled to get to the phone, pulled him away from the phone. Bruce comes around talking to Jim Smith. At that point Jack Rogers grabbed a bottle, tries to break it on the stage, comes around and hits him from behind in the back of the head with a bottle. Yeah, those four men, they were there. *They were judge, jury and executioners*

.... [T]hat is basically what happened. Smith with the handgun, Fant with the rifle. Mark Collins standing outside, and Jack Rogers with a bottle. Four men, they were judge, they were jurors.

. . . .

... *For once I come before a jury, and I have no problem telling you the Commonwealth has proved this defendant guilty of two counts of third degree murder beyond all doubt. Not just a reasonable doubt but beyond all doubt ....* [Defense counsel] in his opening statement kept commenting on the future of the defendant. In a way he was asking for sympathy. *I won't ask for sympathy. I won't tell you about the bright future of Bruce Fisher. I won't ask you for sympathy of Bruce Fisher, and I won't ask you for sympathy for John Shlosky and tell you about his future and how his mother misses him or how Mrs. Fisher misses her son. I won't do that.* And just by the same token, I ask you not to have sympathy for the defendant, to decide this case only on the evidence before you. Sympathy for neither party is the law. So, do not be sympathetic to the victim or the accused, but decide the case on the evidence before you. I keep thinking of freedom of speech because the defense attorney kept asking about freedom of speech, about all these constitutional rights. And he wanted to know why Mooch slapped him, what about the first amendment. I must remind you about the right to life.

Defense counsel did not object to any of these remarks. The Commonwealth argues counsel's failure to object did not constitute ineffectiveness on the theory that the prosecutor merely argued with zeal and fervor within the bounds of the law. It is clear, however, that the prosecutor continually exceeded the bounds of permissible argument.

Although a prosecutor in a homicide case may properly remind the jury that the victim is dead, argument constituting a reference to the victim which is likely to inflame the passions and prejudices of the jury is not proper. *Commonwealth v. Van Cliff*, 483 Pa. 576, 583–84, 397 A.2d 1173, 1177

(1979), *cert. denied* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). The prosecutor's reference to the victims' right to life was an appeal to the jury's emotions and a clear attempt to distract the jury from its duty to render a verdict based on the evidence. In *Commonwealth v. Gilman,* 470 Pa. 179, 368 A.2d 253 (1977), we held a prosecutor's statement in effect referring to the victim's right to life, "[The victim] had no trial like this, without judge, no jury," to be an impermissible attempt to distract the jury from its duty to render a verdict based on the evidence.

Particularly offensive is the prosecutor's appeal to the jury to ignore the Constitution. Such an utterance in a court of law is akin to blasphemy, no matter how intended, or in what context. The Constitution is the essence of the fundamental law of our land against which all actions of the government must be judged and in violation of which any governmental act is null and void. It is the sworn duty of all lawyers in this Commonwealth to uphold and defend the Constitution of the United States and of this Commonwealth. Thus, any appeal to a jury to disregard the Constitution must be deemed improper comment.

Furthermore, as appellant correctly notes, the defense made an issue at trial of the reliability of appellant's statement in view of the fact there had been no interested adult present at the time he was given his *Miranda* warnings and questioned. The voluntariness of this statement was an issue for the jury's consideration, and the prosecutor's remarks amounted to a plea to the jury to deny appellant his legal rights because someone had denied the victims their right to life. Such an argument is clearly improper.

Likewise, the prosecutor's reference to the victims' "bright future[s]" and to their mothers' suffering at the loss of their sons was improper as an attempt to evoke sympathy for the victims and their families. See, *Commonwealth v. Mikesell,* 475 Pa. 589, 381 A.2d 430 (1977). The Commonwealth contends this ill-concealed closing plea for sympathy was warranted as a response to a comment made by defense counsel in his opening argument to the jury *three days earlier.*

Although our cases have excused improper comments when they were made in response to improper closing argument of defense counsel, see, e.g. *Commonwealth v. Van Cliff,* supra, there can be no justification for a prosecutor's resurrecting comments made at such a remote time as a pretext for an improper comment. Nor has the Commonwealth cited any authority for such justification. Additionally, we note that immediately after defense counsel's *opening* remark was made, the trial court *sua sponte* cautioned the jury to base their verdict not on sympathy for appellant, but on the evidence to be presented. Under these circumstances, there can be no justification for the prosecutor's appeal to the sympathies of the jury.

We have stated many times that a prosecutor may not indulge in personal assertions of the accused's guilt, *Commonwealth v. Smith,* 490 Pa. 380, 387, 416 A.2d 986, 989 (1980) and cases cited therein, and this is so whether there is a bald assertion of the prosecutor's belief or an indirect assertion made by stigmatizing the accused through use of epithets. *Commonwealth v. Smith,* supra, *Commonwealth v. Russell,* 456 Pa. 559, 563, 322 A.2d 127, 129–30 (1974). In *Commonwealth v. Anderson,* 490 Pa. 225, 415 A.2d 887 (1980), we held the prosecutor's characterization of the accused as an "executioner" was an impermissible expression of his belief the accused was guilty, and reaffirmed the Court's reasoning in *Commonwealth v. Capalla,* 322 Pa. 200, 185 A. 203 (1936):

> It is no part of a district attorney's duty, and it is not his right, to stigmatize a defendant. He has a right to *argue* that *the evidence* proves the defendant guilty as charged in the indictment, but for the district *attorney himself* to *characterize* the defendant as 'a cold-blooded killer' is something quite different. No man on trial for murder can be officially characterized as a murderer or as 'a cold-blooded killer,' until he is adjudged guilty of murder.... [Emphasis in original.]
>
> . . . .

. . . There are no facts in the record warranting any such belief [that Capalla was a cold-blooded killer] on the part of anyone, and *even if there were, the first officials who had the right to give expression to that belief were the jurors* after the case was committed to their keeping. *The application of epithets to a defendant on trial, and expressions of personal belief in a defendant's guilt have no legitimate place in a district attorney's argument.* A closing argument can be strong and convincing without them. [Emphasis supplied.]

*Id.* 490 Pa. at 229–31, 415 A.2d at 889–90. See, also, Code of Professional Responsibility, DR 7–106(C)(4) Trial Conduct:

In appearing in his professional capacity before a tribunal, a lawyer shall not assert his personal opinion as to the justness of a cause, as to the credibility of a witness, as to the culpability of a civil litigant, or as to the guilt or innocence of an accused; but he may argue, on his analysis of the evidence, for any position or conclusion with respect to the matters stated herein.

Not content to simply stigmatize appellant as an "executioner," the prosecutor in the instant case also commented on his personal belief in appellant's guilt "beyond all doubt." This Court condemned an assertion of the personal belief of the prosecutor in the accused's guilt in *Commonwealth v. Joyner,* supra, 469 Pa. at 339, 365 A.2d at 1235–36 (1976), where the prosecutor announced, "It is perfectly clear that this man is guilty, if not more, being a high school graduate, custodian of the grenades, clearly guilty of murder in the first degree." Similarly, in *Commonwealth v. Russell,* supra, testimony of a former assistant district attorney that the accused was only arrested "when there was no doubt, no doubt whatsoever, that he had masterminded this crime" was held to be an improper, prejudicial expression of personal belief of the accused's guilt.

The prosecutor's argument in this case exceeding the bounds of proper comment in several instances, any reasonable basis for defense counsels' failure to object to these comments is inconceivable. Appellant was denied effective

assistance of counsel; judgment of sentence should be reversed and a new trial granted.

ROBERTS, C.J., and ZAPPALA, J., join.