**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| DEJEREK BASIL SMALLWOOD | : | |
| | : | |
| Appellant | : | No. 538 MDA 2019 |

Appeal from the PCRA Order Entered January 17, 2019
In the Court of Common Pleas of York County
Criminal Division at No(s):  CP-67-CR-0000778-2014

BEFORE:   PANELLA, P.J., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED: FEBRUARY 6, 2020**

Appellant, De'jerek[1] Basil Smallwood appeals, *nunc pro tunc*, from the

order entered on January 11, 2019, denying his first petition filed pursuant to

the Pennsylvania Post Conviction Relief Act (PCRA).[2]  Appellant seeks relief

from the aggregate judgment of sentence of life imprisonment without the

possibility of parole, followed by 3 to 6 years' imprisonment, imposed after a

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] In the PCRA court opinion and the briefs on appeal, the parties spell Appellant's first name "Dejerek."  However, at trial, Appellant stated he spells his first name "De'jerek."  N.T. Trial, 11/05/15, at 585. Therefore, we will use that spelling.

[2] 42 Pa.C.S.A. §§ 9541–9546.

jury convicted him of two counts of murder in the first degree and one count of conspiracy to deliver heroin.[3] Appellant contends the PCRA court erred in denying relief where trial counsel was ineffective because: (1) she failed to call a character witness; and, (2) she failed to object to remarks made by the assistant district attorney during closing statements in which she stated Appellant "decided to be judge, jury, and executioner that night." N.T. Trial, 11/6/15, at 690; Appellant's Brief at 4. Based on the following, we affirm.

We take the underlying facts and procedural history in this matter from this Court's decision on direct appeal and our review of the certified record:

The trial court summarized the facts of the crime as follows:

> On November 23, 2013, at approximately 7:00 PM police were dispatched to an alley between South Hartley Street and West Mason Avenue in York Township, located in York County, Pennsylvania. Upon arrival, police found two victims lying in the street. The responding officer used his flashlight to check on the first victim and determined he was dead. The second victim was still alive but not speaking. The victim pulled up his shirt to show the officer where he had been shot. Shortly thereafter, the second victim passed. Prior to EMS arrival[,] other officers from the department had arrived on scene and set up a crime scene with yellow tape to secure any evidence that might have been in and around the area. The first victim was identified as Braydon Aldinger; identification was made from his license in his wallet. The wallet was not photographed nor was it marked as evidence. The responding officer gave the wallet to Aldinger's mother who was on scene. The second victim was identified as Derek Ferree; identification was made from his license in his wallet. At that time,

---

[3] 18 Pa.C.S.A. §§ 2502, 903, and 35 P.S. § 780-113(a)(30), respectively.

responding officers did not see anyone else in the alleyway of South Hartley Street and West Mason Avenue. The coroner arrived on scene and ruled both deaths a homicide caused by gunshot wounds. Homicide detectives were called in to investigate and eyewitnesses were taken to the station for questioning.

The same night, on November 23, 2013, homicide detectives interviewed Arianna Tavares (Tavares), who told police she was an eyewitness to the crime. During the interview Tavares told detectives, she was with both victims that night and they had arranged to meet with Appellant and a second man Laquan Pierrelouis (Pierrelouis), in the alley way of South Hartley to buy heroin. Tavares told detectives that one of the victims punched Appellant in the face and a tussle broke out. She explained that once the tussle started, she began to run away from the alley and that is when she heard the two shots. On December 10, 2013, charges were filed against Appellant and Pierrelouis based off of the police interview with Tavares.

York County Police Department's homicide detective George Ripley was assigned as lead detective on this case. Detective Ripley collected a surveillance video taken by the security system in the back of Lincoln Charter School, which is located across from the crime scene. The surveillance video showed a group of five people, four males, and one female walking down the alley of South Hartley Street. The video shows an altercation and one male running from the crime scene with a weapon in his hand.

Three days later, on November 26, 2013, Tavares was interviewed by police for a second time. During this interview she was shown the surveillance video collected from Lincoln Charter School. After viewing the video, she identified Appellant as the individual running down the alley with the weapon in his hand. Tavares explained that she could identify Appellant because of the clothes he was wearing.

> Appellant's jury trial began on November 2, 2015, and on November 6, 2015, the jury convicted Appellant as described above. The trial court sentenced Appellant on December 18, 2015, to concurrent terms of life imprisonment for the two murder convictions and a consecutive term of imprisonment of three to six years for conspiracy to deliver heroin. Appellant filed a timely post-sentence motion, which the court denied on May 6, 2016. Appellant filed a timely notice of appeal on May 31, 2016. Both Appellant and the trial court complied with Pa.R.A.P. 1925.

*Commonwealth v. Smallwood*, 2017 WL 972116, at *1 (Pa. Super. Mar. 13, 2017) (unpublished memorandum) (citation and footnote omitted).

On March 13, 2017, this Court affirmed the judgment of sentence. *Id.* On April 23, 2017, the Pennsylvania Supreme Court denied leave to appeal. *See Commonwealth v. Smallwood*, 170 A.3d 1005 (Pa. 2017).

Appellant filed the instant, timely *pro se* PCRA petition on June 26, 2018. The PCRA court appointed counsel. An evidentiary hearing took place on December 4, 2018.

At the close of the hearing, the PCRA court partially denied Appellant's PCRA petition. Following the submission of briefs on the remaining issues, the court denied the rest of the PCRA petition on January 11, 2019. Appellant did not immediately file an appeal. On March 24, 2019, Appellant filed a motion

to file a notice of appeal *nunc pro tunc*. The PCRA court granted the motion

on March 29, 2019. On April 2, 2019, Appellant filed a notice of appeal.[4]

> Our standard of review is well settled:
>
> This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, [w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. [W]here the petitioner raises questions of law, our standard of review is *de novo* and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

**Commonwealth v. Rigg**, 84 A.3d 1080, 1084 (Pa. Super. 2014) (quotation

marks and citations omitted). Furthermore, where, as here, the defendant

alleges counsel rendered ineffective assistance, we note:

> In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.
>
> To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

---

[4] Appellant timely filed a concise statement of errors complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b). The PCRA court issued an opinion on May 6, 2019 adopting its January 11 2019 opinion.

*Commonwealth v. Michaud*, 70 A.3d 862, 867 (Pa. Super. 2013) (quotation marks and citations omitted). "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." *Commonwealth v. Mason*, 130 A.3d 601, 618 (Pa. 2015).

In his first claim, Appellant contends counsel was ineffective for failing to call his mother to testify as a character witness at trial. Appellant's Brief, at 9-16; N.T. PCRA Hearing, 12/04/18, at 19-21.

At the evidentiary hearing, PCRA counsel questioned one of Appellant's trial attorneys, Dawn Cutaia, Esquire, about her failure to call Appellant's mother, Yolanda Smallwood as a character witness to testify about Appellant's reputation for truthfulness. N.T. PCRA Hearing, 12/04/18, at 19-20. Ms. Cutaia testified she had discussed the issue with Appellant and with co-counsel Suzanne Smith and both attorneys were concerned Yolanda Smallwood would not be a good witness because "[they] believed she had an alcohol addiction[.]" *Id.* at 20.

Yolanda Smallwood also testified at the hearing, she admitted she had a prior arrest for public drunkenness but claimed the arrest was "years ago." *Id.* at 35. She further stated, "[t]hat's why I don't understand why [trial counsel] would say that. I never was around her smelling like alcohol, and I never came to one of my son's court hearings with a hangover." *Id.* at 36.

Ultimately, Yolanda Smallwood denied having a problem with alcohol, "at that time." *Id.*

> To prove that trial counsel provided ineffective assistance for failing to call a witness, a petitioner must demonstrate:
>
> > (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew of, or should have known of, the existence of the witness; (4) the witness was willing to testify for the defense; and (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

*Commonwealth v. Brown*, 196 A.3d 130, 167 (Pa. 2018) (citation omitted).

An attorney's failure to present character witnesses may constitute ineffective assistance of counsel. *Commonwealth v. Harris*, 785 A.2d 998, 1000 (Pa. Super. 2001). However, an attorney who chooses not to present evidence of her client's good character is not ineffective so long as the attorney had a "reasonable strategic basis" not to proffer such evidence. *Commonwealth v. Von Horn*, 797 A.2d 983, 988 (Pa. Super. 2002).

Here, Appellant argues the witness would have testified as to his reputation for truthfulness. *See* Appellant's Brief, at 9-16. However, our review of the record demonstrates such testimony would not have been admissible in his case. In *Commonwealth v. Fulton*, 830 A.2d 567 (Pa. 2003), the Pennsylvania Supreme Court reaffirmed the long-standing principle that rehabilitative evidence of a defendant's good reputation for truthfulness is admissible only in cases where either the character trait of truthfulness is implicated by the elements of the charged offenses, or in cases where the

Commonwealth specifically impeached the defendant's reputation for truthfulness. *See Fulton*, 830 A.2d at 572-73. The Pennsylvania Supreme Court went on to explain:

> where the prosecution has merely introduced evidence denying or contradicting the facts to which the defendant testified, but has not assailed the defendant's community reputation for truthfulness generally, evidence of the defendant's alleged reputation for truthfulness is not admissible. Similarly, cross-examination of the defendant that challenges the veracity of his testimony in the particular case, but does not touch upon his general reputation in the community for being truthful, does not open the door to the introduction of good character evidence concerning reputation for truthfulness.

*Id.* at 573 (citations omitted).

We have reviewed the record, and the elements of the charged offenses did not implicate the character trait of truthfulness. Further, Appellant does not point to any instance wherein the Commonwealth impugned his reputation for truthfulness.[5] *See* Appellant's Brief, at 9-16. Thus, Appellant has not demonstrated the Commonwealth ever "attacked, impugned or otherwise besmirched his general reputation in the community for telling the truth." *Fulton*, 830 A.2d at 573. Therefore, the witness's testimony would not have

---

[5] The record demonstrates, on direct examination, Appellant admitted he lied in his initial statement to police. N.T. Trial, 11/05/15, at 597. On cross-examination, the Commonwealth questioned Appellant about the admitted lies he told the police but never generally impugned his reputation for truthfulness in the community. *Id.* at 614-15. This is the exact type of questioning our Supreme Court held in *Fulton*, "does not open the door to the introduction of good character evidence concerning reputation for truthfulness." *Fulton*, 830 A.2d at 573.

been admissible with respect to showing his truthfulness and counsel was not ineffective for failing to call her. ***See id.*** at 573. Appellant's first claim does not merit relief. ***See Michaud***, 70 A.3d at 867.

In his second and final claim, Appellant maintains trial counsel was ineffective for failing to object to the assistant district attorney's statement during closing argument, "[t]he [d]efendant decided to be judge, jury and executioner that night."[6] N.T. Trial 11/06/15, at 690. We disagree.

With respect to the range of permissible comments in closing arguments, this Court has stated:

> It is axiomatic that during closing arguments the prosecution is limited to making comments based upon the evidence and fair deductions and inferences therefrom. Indeed, given the critical role that the Commonwealth plays in the administration of justice, a prosecutor has been historically prohibited from expressing a personal belief regarding a defendant's guilt or innocence or the veracity of the defendant or the credibility of his witnesses.

> However, because trials are necessarily adversarial proceedings, prosecutors are entitled to present their arguments with reasonable latitude. Moreover, it is well settled that defendants are entitled to a fair trial, not a perfect one. Thus, a prosecutor's remarks do not constitute reversible error unless their unavoidable effect [was] to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant so that they could not weigh the evidence objectively and render a true verdict.

---

[6] At the evidentiary hearing, Ms. Cutaia stated she did not object to the Commonwealth's remark made because she did not think the remark "was objectionable." N.T. PCRA Hearing, ***supra*** at 27.

*Commonwealth v. Ligon*, 206 A.3d 515, 519-20 (Pa. Super. 2019) (citations and internal quotation marks omitted).

In support of his contention that the prosecutor's remarks were improper, Appellant relies on a single case, *Commonwealth v. Anderson*, 415 A.2d 887 (Pa. 1980). *See* Appellant's Brief, at 17-19. In *Anderson*, during closing arguments, the Commonwealth referred to the murder of the victims as an assassination, called the appellant an executioner, and implied that the defendants murdered the victims because they violated a "code." *Anderson*, 415 A.2d at 888. Our Supreme Court stated:

> We have repeatedly said the district attorney is a quasi-judicial officer representing the Commonwealth, and his duty is to seek justice, not just convictions. The district attorney must limit his remarks to facts in evidence and legitimate inferences therefrom. The district attorney may not ask the jury to draw unwarranted deductions from the evidence. During summation, the district attorney must present the facts in a manner which allows the jury to dispassionately and objectively evaluate the testimony in a sober frame of mind and which produces a verdict warranted by the evidence, not one inspired by emotion. Finally, we have condemned remarks by the district attorney which stigmatize a defendant.

*Id.* at 888-89 (citations omitted). Ultimately, the *Anderson* court concluded the evidence did not support the inferences the defendant assassinated the victims, acted as an executioner, or killed them because of the violation of a street code; therefore, it held the prosecutor's remarks were improper, reversed the denial of PCRA relief, vacated the judgment of sentence, and ordered a new trial. *Id.* at 890.

- 10 -

However, our Supreme Court decided **Anderson** almost forty years ago and Appellant entirely ignores subsequent developments in the law. As we noted in **Ligon**,

> in **Commonwealth v. D'Amato**, 514 Pa. 471, 526 A.2d 300, 313 (1987), our Supreme Court concluded that a prosecutor's closing argument, which characterized the defendant as a "clever, calculating, and cunning executioner," did not require reversal. There, the Court emphasized that the prosecutor's remarks were made in fair response to the defense's characterization of the defendant as an uneducated man tricked into a confession. Likewise, in **Commonwealth v. Chamberlain**, 612 Pa. 107, 30 A.3d 381, 408 (2011), our Supreme Court emphasized that a prosecutor's statements must be viewed in light of the evidence presented in the case. In **Chamberlain**, the Court held that the prosecutor's description of the defendant as a "murderer" did not require reversal where inferences from the evidence in the case could lead to the conclusion that the defendant had murdered the victim. **Id.**

**Ligon**, **supra** at 520.

In a recent decision, **Commonwealth v. Clancy**, 192 A.3d 44 (Pa. 2018), our Supreme Court addressed the issue of whether trial counsel was ineffective for failing to object to the prosecutor's closing remarks wherein the prosecutor called the defendant a "dangerous man" and a "cold-blooded killer." **Id.** at 47. As in the instant matter, the murder in **Clancy** arose out of a street fight; again, like the instant matter, the defendant shot and killed an unarmed man. **Id.**

The Commonwealth charged the defendant with criminal homicide and, at trial, the defendant argued he lacked the necessary intent to kill because the killing arose out of the heat of passion. **Id.** at 48. During closing

arguments, the prosecutor made several remarks disputing the defendant's claim he acted in the heat of passion, ultimately concluding with the remarks quoted above. *Id.*

Clancy unsuccessfully sought PCRA relief based upon trial counsel's failure to object to the remarks. *Id.* at 49-51. Our Supreme Court affirmed the denial of PCRA relief; after a lengthy review of the history of the law in this area, the Court stated:

> Over time, our precedents came to express greater recognition of the prosecutor's right to advocate, and our understanding of permissible prosecutorial conduct expanded. The propriety of the prosecutor's remarks no longer was confined to the words themselves, viewed in isolation . . . Under the two-part test, our substance analysis centered upon the elements of the charges leveled against the defendant and the evidence necessary to prove those elements at trial. In conducting that analysis, we also evaluated whether the remarks fairly were made in response to defense counsel's arguments.
>
> * * * *
>
> > Prosecutorial misconduct . . . will not be found where comments were based on evidence or proper inferences therefrom or were only oratorical flair. Moreover, in order to evaluate whether the comments were improper, we must look at the context in which they were made. We note that this is a relatively stringent standard against which [the defendant] must labor.
>
> * * * *
>
> Thus . . . this Court has tolerated harsh characterizations of the defendant when they are germane to the law that applies to the case at hand and to a particular element of an offense at issue. Moreover, in determining whether the prosecutor's statement is proper, this Court has made clear that, where applicable, we must

consider whether the contested remarks constitute a fair response to the arguments of the defense.

The foregoing overview of the roles of the prosecutor and the cases in which this Court has addressed the duties and rights that attend those roles reveals that the definition of permissible oratorical flair has broadened over time, as this Court's emphasis has shifted to comprehend the role of a prosecutor not only as an officer of the court but as an advocate as well. As a result, the distinct line between permissible oratorical flair and improper expressions that had been drawn . . . has become somewhat blurred. Although we find no profound flaw in our body of precedent, it nonetheless appears that our jurisprudence, as it relates to the propriety of a prosecutor's closing argument, requires clarification.

\* \* \* \*

To assess prosecutors' adherence to these principles, we have required Pennsylvania courts to evaluate both the substance of the challenged remark and its effect upon the jury. We discern no reason to depart from this approach. The two-part analysis provides a practical framework for evaluating prosecutorial remarks in which a fair balance may be struck between the prosecutor's duties as an officer of the court and his rights as an advocate.

The substance prong requires a court to examine the challenged remark in the context of the issues presented at trial. The court first must determine whether the remark reasonably relates to the facts of the case. A statement is impermissible where the language and inferences of the summation no longer relate back to the evidence on the record. Upon finding that the statement at issue has a reasonable evidentiary foundation, the court next must determine whether the statement facilitates the trier's duty to decide the case on the evidence. The remark not only must be based upon the evidence; it also must bear relevance to the crimes at issue. Merely derogatory, *ad hominem* characterizations of the defendant or defense counsel are beyond the bounds of permissible advocacy; the prosecutor's comments must be tethered to the elements of the charged offenses and the evidence offered to prove those elements, and also should be tailored to a fair and reasonable rebuttal of the arguments advanced by the defense.

- 13 -

However, there is no *per se* rule which requires the grant of a new trial whenever the district attorney acts improperly. If the court determines that the statement was improper, it must then evaluate the effect of the remark pursuant to the unavoidable prejudice test:

> [W]here the language of the district attorney is intemperate, uncalled for and improper, a new trial is not necessarily required. The language must be such that its unavoidable effect would be to prejudice the jury, forming in their minds fixed bias and hostility toward the defendant, so that they could not weigh the evidence and render a true verdict. The effect of such remarks depends upon the atmosphere of the trial, and the proper action to be taken is within the discretion of the trial court.

*Id.* at 60-63 (footnotes, citations and quotation marks omitted). Applying the above-quoted standards, the Supreme Court ultimately concluded that the remarks made by the prosecutor were not improper and that, therefore, counsel had no basis to object to them. *Id.* at 66-68. The Court specifically noted,

> The state of mind that must be proven in a murder prosecution is an abstraction that cannot be established merely by a recitation of the physical evidence in the case. Often, the defendant's state of mind can be established only by circumstantial proof and the jury's powers of deduction and inference. In confronting this evidentiary challenge, prosecutors require some latitude in their arguments to the jury. **In cases like the one before us today, in which the defendant admits to the physical act of killing the victim but argues self-defense, or some lesser degree of culpability, it is especially important that we allow prosecutors to respond fairly to arguments made in the defense closing argument.**

*Id.* at 65-66 (citations and quotation marks omitted; emphasis added).

- 14 -

In its opinion denying Appellant's PCRA petition, the trial court aptly applied *Clancy* and discussed the issue as follows:

In the present case, the Commonwealth stated the following during its closing argument, which [Appellant] alleges caused him prejudice:

The Defendant decided to be judge, jury, and executioner that night. He decided what crimes Derek Ferree and Braydon Aldinger were guilty of. He decided what that punishment was, and that punishment was death.

Like in *Clancy*, [Appellant] did not dispute the issue of whether he killed the victims in this matter. The main issue for the jury to decide in this case was whether [Appellant's] actions were justified and in self-defense, warranting acquittal, or whether [Appellant] was not justified and his actions were either unreasonable, with malice, or specifically intended, warranting voluntary manslaughter, third-degree, or a first-degree murder conviction, respectively.

[The PCRA court] find[s] the statements above were based on a reasonable evidentiary foundation. At trial, [Appellant] had argued that he was not guilty of murder or manslaughter and argued he acted in self-defense when he shot the victims because they were attacking him, may have been trying to rob him, and he was scared. The Commonwealth attempted to refute that assertion by arguing [Appellant] brought a gun to a drug deal, he could have easily retreated, the [v]ictims were not armed and only attacked [Appellant] with their fists, and the fact that the victims were hit more than once by bullets in vital parts of their bodies.

By referring to [Appellant] as the "judge, jury, and executioner", the Commonwealth was asserting that [Appellant's] act of shooting the victims multiple times after they had just beat him up and tried to rob him was a conscious and deliberate decision rather than spur of the moment or a justified act. The Commonwealth asserted a reasonable evidentiary inference that [Appellant] had the specific intent to kill, rebutted [his] argument for self-defense, and referring to [him] as "judge, jury, and executioner" was arguing that reasonable inference that [Appellant] took justice into his own hands and made a conscious

and deliberate decision to kill the [v]ictims when he shot each one multiple times in vital parts of their bodies.

Similarly, [the PCRA court] find[s] that the statements facilitated the trier's duty to decide the case on the evidence and it was relevant to the crimes at issue. As noted in ***Clancy***, it is often difficult for the Commonwealth to prove first-degree murder merely based on the physical evidence and it is often forced to persuade the jury based on circumstantial evidence and inferences to support the argument that a [d]efendant specifically intended to kill someone.

Therefore, considering the test set forth in ***Clancy***, we find that the statement that [Appellant] was "judge, jury, and executioner" was permissible oratorical flair. [Appellant] has failed to demonstrate that he suffered prejudice when his trial counsel failed to object to these comments. He is not entitled to relief on this claim.

Trial Court Opinion, 1/11/19, at 20-22 (record citation omitted).

We have thoroughly reviewed the record and applicable law in this matter, and we discern no error of law or abuse of discretion in the trial court's discussion of this issue. Appellant's second and final claim does not merit relief.

In light of the foregoing, our review of this matter demonstrates that the record supports the PCRA court's denial of relief and is free from legal error and abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>02/06/2020</u>